UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GRE-MILWAUKEE, LLC,

               Plaintiff,

      v.

                                     Case No. 16-cv-407

J & L FIBER SERVICES, INC.,

               Defendant.

## DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant J & L Fiber Services, Inc. ("JLF"), by and through its attorneys, Reinhart Boerner Van Deuren s.c., answers the Complaint and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff GRE-Milwaukee, LLC ("GRE-Milwaukee") is a limited liability company, organized under the laws of Missouri. GRE-Milwaukee's sole member is Gund Real Estate, LLC. The members of Gund Real Estate, LLC are Michelle Smith, Steve Gund, Rich Gund, David Gund, and the Paul Gund Trust. Michelle Smith, Steve Gund, Rich Gund, and David Gund have permanent homes in Missouri, to which each intends to return if away; each is domiciled in Missouri and is thus a citizen of Missouri. The sole trustee of the Paul Gund Trust is Paul Gund and its beneficiaries are Michelle Smith, Steve Gund, Rich Gund, and Anne Marie Gund Greenberg. Anne Marie Gund Greenberg has a permanent home in Colorado, to which she intends to return if away. Because the sole trustee of the Paul Gund Trust is a citizen of Missouri, the Paul Gund Trust is a citizen of Missouri. As a result of the foregoing, GRE-

33914260v3

Milwaukee is a citizen of Missouri. Significantly, none of GRE-Milwaukee, Gund Real Estate, LLC, or any of its members are citizens of Wisconsin.

ANSWER: JLF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint and therefore denies same.

2. Defendant J & L Fiber Services, Inc. f/k/a J&L Plate, Inc. ("J&L"), is a corporation organized under the laws of Wisconsin, with its principal place of business and headquarters located in Waukesha County, Wisconsin. J&L is a Citizen of Wisconsin.

ANSWER: JLF admits the allegations in paragraph 2 of the Complaint.

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, because there is complete diversity of citizenship between GRE-Milwaukee and J&L and the amount in controversy, as set forth below, is greater than $75,000.00.

ANSWER: JLF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint and therefore denies same.

4. In September, 2015, GRE-Milwaukee acquired property located at 809 Philip Drive, Waukesha, WI 53186 and associated parking area and land, located within Waukesha County, Wisconsin (the "Property").

ANSWER: JLF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint and therefore denies same.

5. J&L occupied the Property as a tenant before and after the acquisition.

ANSWER: In response to the allegations in paragraph 5 of the Complaint, JLF admits to occupying the Property during the term of the Lease, but JLF lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding an alleged acquisition and therefore denies same.

6. After the acquisition, GRE-Milwaukee, LLC was the landlord of the Property.

ANSWER: JLF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 of the Complaint and therefore denies same.

7. J&L is subject to the personal jurisdiction in the State of Wisconsin because, among other things, J&L is a Wisconsin corporation, the Property that is the subject of the dispute is located in Wisconsin, J&L is subject to service of process in Wisconsin, and J&L's acts or omissions at issue herein occurred in Wisconsin.

ANSWER: JLF denies the allegations in paragraph 7 on the grounds that the allegations set forth and seek multiple legal conclusions but admits that JLF is subject to personal jurisdiction in certain courts in the State of Wisconsin.

8. Venue is proper in this district under 28 U.S.C. § 1391 because, among other reasons, a substantial part of the events or omissions giving rise to GRE-Milwaukee, LLC's claims arose in this district in that, for example, performance and non-performance under the Leases occurred in Waukesha County, Wisconsin; the Property that is the subject of the dispute is situated in this district in Waukesha County, Wisconsin; J&L resides, as is defined by § 1391, in this district in that J&L is subject to personal jurisdiction in this district as a result of its activities in this district, as are further described herein.

ANSWER: In response to the allegations in paragraph 8 of the Complaint, JLF lacks knowledge or information sufficient to form a belief as to whether Federal jurisdiction exists in this case and therefore denies that venue is proper in this District. However, JLF admits that if Federal jurisdiction exists in this case, then venue is proper in this Eastern District of Wisconsin.

## <u>ADDITIONAL FACTUAL ALLEGATIONS</u>

9.      Jerome D. Sullivan, as landlord, and J&L, as tenant, entered into a building lease, effective July 2, 1992, which was subsequently amended ("Building Lease"). The Building Lease and amendments are attached hereto as Exhibit A and are incorporated herein by reference.

<u>ANSWER</u>:      In response to the allegations in paragraph 9 of the Complaint, JLF admits that JLF entered into a Building Lease with Jerome D. Sullivan on July 2, 1992, but JLF denies that Exhibit A contains a complete and accurate copy of the documents containing the terms of the Building Lease and denies any allegations inconsistent therewith.

10.      Gartland Associates, as landlord, and J&L, as tenant, entered into a parking area and vacant land lease, effective July 2, 1992, which was subsequently amended (the "Parking Lease"). The Parking Lease and amendments are attached hereto as Exhibit B and are incorporated herein by reference. The Building Lease and Parking Lease are collectively referred to as the "Lease," throughout.

<u>ANSWER</u>:      In response to the allegations in paragraph 10 of the Complaint, JLF admits that JLF entered into a Parking Lease with Gartland Associates on July 2, 1992, but JLF denies that Exhibit B contains a complete and accurate copy of the documents containing the terms of the Parking Lease and amendments and denies any allegations inconsistent therewith.

11.      On or about November 20, 2012, title to the Property that was the subject of the Lease was transferred to JDS Leasing, LLC. JDS Leasing, LLC assumed the landlord's obligations under the Lease in writing.

<u>ANSWER</u>:      JLF lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint and therefore denies same.

12.     In September 2015, GRE-Milwaukee acquired the Property.  GRE-Milwaukee

assumed the landlord's rights and obligations under the Lease in writing.

ANSWER:     JLF lacks knowledge or information sufficient to form a belief as to the truth of

the allegations in paragraph 12 of the Complaint and therefore denies same.

13.     In July of 1992, the then-landlord represented the Property was "in all material

respects in good condition and repair, reasonable wear and tear excepted . . . ." (Building Lease,

Section 3; Parking Lease, Section 3.)

ANSWER:     In response to the allegations in paragraph 13 of the Complaint, JLF alleges that

the quoted Building Lease speaks for itself and denies any allegations inconsistent therewith.

JLF further denies the allegations in paragraph 13 of the Complaint on the grounds that the

allegations fail to provide a complete quotation.

14.     Under the Lease, J&L agreed as follows:

> 25.     Net Lease.  This Lease is intended to be and shall be an absolute
> "net, net, net" lease, and the rent and all other sums payable hereunder by
> Tenant (all of which shall be deemed to be additional rent) shall be paid,
> except as specifically provided herein to the contrary, without set-off,
> counterclaim, abatement, suspension, deduction, or defense.  As more
> particularly set forth herein, Tenant shall pay all Taxes, insurance
> premiums, maintenance, repair and replacement costs and expenses utility
> charges and expenses, and all other costs and expenses, of whatever
> nature, relating to the Premises and/or the operation thereof during the
> term of this Lease.  (Building Lease, Section 25; Parking Lease, Section
> 25.)

> 7.     Repairs.  Except as otherwise specifically provided in this Lease,
> throughout the term hereof, Tenant shall keep the Premises in as good a
> state of condition or repair as existed at the Commencement Date,
> ordinary wear and tear excepted, and shall be responsible for all
> maintenance, repairs and replacements to the Premises, structural and
> nonstructural, ordinary or extraordinary, foreseen or unforeseen, including
> but not limited to all structural repairs and replacements to the foundation,
> exterior and/or load bearing walls, roof, and mechanical systems of the
> Premises. (Building Lease, Section 7.)

7.    Repairs/Operation of Premises.  Except as otherwise specifically provided in this Lease, throughout the term hereof, Tenant shall keep the Premises in good condition and repair and be responsible for all maintenance, repairs and replacements to the Premises, ordinary wear and tear excepted, ordinary or extraordinary, and foreseen or unforeseen.  The maintenance obligations for which Tenant is liable shall include, without limitation, keeping he Premises in a reasonably clean unlettered, orderly and sanitary condition; reasonably removing snow and ice; and keeping all marking and directional signs district and legible.  Landlord shall have no obligation or liability for the failure to provide adequate lighting and security for the Premises.  In the event that Tenant's use of the Premises requires security and/or lighting for the safe operation and use by Tenant, its agents, employees, customers, sublessees and invitees, Tenant shall have the sole obligation and responsibility for providing same.  (Parking Lease, Section 7.)

10.4.  Tenant hereby agrees to indemnify and hold Landlord harmless from and against any and all liabilities, obligations, claims, damages, penalties, causes of action, judgments, costs, and expenses (including, but not limited to, reasonable attorneys" fees) imposed upon, incurred by, or asserted against Landlord or the Premises during or with respect to the term hereof, or any extension thereof, for any reason, whatsoever, including, but not limited to: . . . (b) any failure by Tenant to duly and fully perform or comply with each and all of the terms of this Lease; . . . . (Building Lease, Section 10.4; Parking Lease, Section 10.4.)

18.    [Termination].  Upon the termination of this Lease, or any extension thereof, by expiration or otherwise, Tenant shall surrender the Premises to Landlord free from any condition(s) which could give rise to or has given rise to any liability, expense, or cause of action against Landlord whatsoever . . . .

. . .

Tenant shall, except as to those conditions set forth above for which Tenant is not liable, at its sole cost and expense, remedy any condition on the Premises either arising as a result of the presence of Hazardous Materials on the Premises or as a result of the violation of any Environmental Laws or from any other condition not related to the aforementioned, as of the time the Premises are to be surrendered to Landlord.  Tenant herein agrees to indemnify, defend and hold Landlord harmless from and against any and all claims, judgments, damages, penalties, fines, costs, expenses (including reasonable attorneys' fees), liabilities or losses from any condition on the Premises, or violation of any Environmental Laws, except those Excluded Conditions defined above, which Tenant failed to remedy or correct prior to the surrender of the

> Premises, and which has given rise to, or could give rise in the future to, any claims, judgments, damages, penalties, fines, costs, expenses, liabilities or losses against Landlord.  (Building Lease, Section 18; Parking Lease, Section 18.)

ANSWER:    In response to the allegations in paragraph 14 of the Complaint, JLF alleges that the quoted Lease speaks for itself and denies any allegations inconsistent therewith and also denies that the quoted paragraphs are complete and accurate.

15.    During the term of the Lease, various aspects of the Property were in need of maintenance, repair, and replacement.

ANSWER:    In response to the allegations in paragraph 15 of the Complaint, JLF denies that JLF failed to undertake any maintenance, repairs, or replacements that JLF was required by the Lease or the law to undertake, and JLF affirmatively alleges that the phrase "various aspects of the Property" and the term "need" are vague and ambiguous and subject to multiple interpretations.

16.    J&L breached the Lease by, among other things, failing to maintain, repair, and replace various aspects of the Property as required under the Lease and failing to pay the cost and expenses of maintenance, repairs, and replacements.

ANSWER:    JLF denies the allegations in paragraph 16 of the Complaint.

17.    J&L breached the Building Lease by, among other things, failing to keep the property subject to the Building Lease in as good a state of condition or repair as it existed on July 2, 1992, ordinary wear and tear excepted, and failing to maintain, make repairs, and make replacements to the property, structural and nonstructural, ordinary or extraordinary, foreseen or unforeseen, including, but not limited to, all structural repairs and replacements to the foundation, exterior and/or load bearing walls, roof, and mechanical systems of the property. J&L also breached the Parking Lease by failing to comply with Section 7 of that lease.

33914260v3

7

ANSWER:    JLF denies the allegations in paragraph 17 of the Complaint.

18.    J&L breached the Lease by, among other things, failing to surrender the Property at the end of the Lease in the appropriate condition and failing to indemnify and hold harmless GRE-Milwaukee as required under the Lease.  Rather, J&L surrendered the property to GRE-Milwaukee subject to conditions that give rise to liability and expense and refused to pay any costs to remedy the condition of the premises.

ANSWER:    JLF denies the allegations in paragraph 18 of the Complaint.

19.    J&L failed to maintain, repair, and/or replace, as applicable, the roof, HVAC systems, the interior and exterior of the warehouse (including the walls, floors, and doors), the electrical, plumbing, sprinkler, and sewer systems, and the exterior asphalt, among other aspects of the Property.  In addition, J&L failed to maintain the Property to prevent or remediate water damage and mold.

ANSWER:    JLF denies the allegations in paragraph 19 of the Complaint.

20.    J&L neglected the Property.  For example, J&L neglected the roof, HVAC systems, the interior and exterior of the warehouse (including the walls, floors, and doors), the electrical, plumbing, and sewer systems, and the exterior asphalt, among other aspects of the Property.

ANSWER:    JLF denies the allegations in paragraph 20 of the Complaint.

21.    J&L concealed active water leaks and did not disclose such leaks to GRE-Milwaukee at the time of the surrender.

ANSWER:    JLF denies the allegations in paragraph 21 of the Complaint.

22.    J&L otherwise breached the Lease.

ANSWER:    JLF denies the allegations in paragraph 22 of the Complaint.

23.     GRE-Milwaukee provided J&L notice of its breaches and an opportunity to cure, where required.  For example, On October 1, 2015 and October 9, 2015, J&L was provided notice of various defaults under the Lease.  These letters are attached hereto as Exhibit C and Exhibit D, respectively, and are incorporated herein by reference.  On December 15, 2015, J&L was sent a letter stating that J&L remains in default of the Lease and, among other things, providing specific examples of building and property systems in need of repair.  The December 15, 2015 letter is attached hereto as Exhibit E and incorporated herein by reference.  J&L failed to cure its breaches under the Lease.

ANSWER:     In response to the allegations in paragraph 23 of the Complaint, JLF admits that Plaintiff, at various times, provided JLF with letters alleging that JLF was in breach of the Leases, but JLF denies that JLF was actually ever in breach of the Leases.  Accordingly, JLF denies that it failed to cure breaches because there were no breaches requiring a cure.

24.     In many instances, J&L engaged in a practice of making superficial repairs meant to make it seem as if J&L was making the necessary repairs, as opposed to taking the required steps to appropriately maintain and repair the Property.  For example, J&L engaged in sporadic and superficial patching to the exterior paved surfaces; some of these patches have already begun to degrade.

ANSWER:     JLF denies the allegations in paragraph 24 of the Complaint.

25.     J&L surrendered the Property at the end of the Lease in a condition that will require significant repair and expense to GRE-Milwaukee.

ANSWER:     JLF denies the allegations in paragraph 25 of the Complaint.

26.     J&L vacated the Property and is no longer making repairs or working toward curing its breaches of the Lease.

ANSWER:     JLF denies the allegations in paragraph 26 of the Complaint on the grounds that the allegations presume that JLF breached the Leases, which is not true.

27.     On January 7, 2016, after J&L's surrender of the Property, GRE-Milwaukee notified J&L of its breaches in a letter attached hereto as Exhibit F and incorporated herein by reference.

ANSWER:     In response to the allegations in paragraph 27 of the Complaint, JLF admits that Plaintiff provided JLF with a letter dated January 7, 2016, alleging that JLF was in breach of the Leases, but JLF denies that JLF was actually ever in breach of the Leases.

28.     On March 1, 2016, GRE-Milwaukee notified J&L of a number of additional J&L breaches.  This letter is attached hereto as Exhibit G and is incorporated herein by reference. GRE-Milwaukee continues to discover additional problems with the Property.

ANSWER:     In response to the allegations in the first and second sentences of paragraph 28 of the Complaint, JLF admits that Plaintiff provided JLF with a letter dated March 1, 2016, alleging that JLF was in breach of the Leases, but JLF denies that JLF was actually ever in breach of the Leases.  In response to the allegations in the third sentence of paragraph 28 of the Complaint, JLF objects that the allegation is vague and ambiguous with respect to the term "problems," but JLF affirmatively denies that JLF ever breached either of the Leases and therefore denies any allegation that breaches are still being discovered by Plaintiff.

## COUNT I - BREACH OF CONTRACT

29.     GRE-Milwaukee incorporates all previous paragraphs as this paragraph.

ANSWER:     In response to the allegations in paragraph 29 of the Complaint, JLF incorporates its responses to all preceding paragraphs as if set forth in full herein.

30.     GRE-Milwaukee, as successor landlord, and J&L have a valid and enforceable contract under the Lease.

ANSWER:     In response to the allegations in paragraph 30 of the Complaint, JLF admits that a contract exists between JLF and Plaintiff, but JLF denies any allegation that JLF is liable to Plaintiff for breach of JLF's contractual obligations, and JLF further reserves its rights to challenge the enforceability of particular provisions of the Lease.

31.     GRE-Milwaukee performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Lease with J&L.

ANSWER:     JLF denies the allegations in paragraph 31 of the Complaint.

32.     J&L failed to comply with the Lease, causing GRE-Milwaukee damage estimated to be in excess of $2,000,000.

ANSWER:     JLF denies the allegations in paragraph 32 of the Complaint.

33.     J&L was provided notice of its breaches and an opportunity to cure as required under the Lease.

ANSWER:     In response to the allegations in paragraph 33 of the Complaint, JLF admits that Plaintiff, at various times, provided JLF with letters asserting that JLF was in breach of the Leases, but JLF denies that JLF was actually ever in breach of the Leases.  Accordingly, JLF denies that it failed to cure breaches because there were no breaches requiring a cure.

34.     J&L failed to keep the property in as good a state of condition or repair as existed on July 2, 1992 as required under the Lease.

ANSWER:     JLF denies the allegations in paragraph 34 of the Complaint.

35.     J&L failed to maintain, repair, and/or replace, as applicable, and to pay costs and expenses to maintain, repair, and/or replace, as applicable, as required under the Lease.

ANSWER:     JLF denies the allegations in paragraph 35 of the Complaint.

36.     J&L failed to surrender the Property free from any conditions that could give rise to or has given rise to any liability or expense as required under the Lease.

ANSWER:     JLF denies the allegations in paragraph 36 of the Complaint.

37.     J&L failed to indemnify and hold harmless GRE-Milwaukee for such costs, expenses, and loss, as required under the Lease.

ANSWER:     JLF denies the allegations in paragraph 37 of the Complaint on the grounds that no indemnification was required because JLF never breached either of the Leases.

38.     J&L otherwise breached the Leases.

ANSWER:     JLF denies the allegations in paragraph 38 of the Complaint.

39.     J&L failed to cure its breaches.

ANSWER:     In response to the allegations in paragraph 39 of the Complaint, JLF denies that JLF was actually ever in breach of the Leases.  Accordingly, JLF denies that it failed to cure breaches because there were no breaches requiring a cure.

40.     GRE-Milwaukee has incurred and will incur costs, expenses, and loss as a result of J&L's breaches.

ANSWER:     JLF denies the allegations in paragraph 40 of the Complaint.

41.     GRE-Milwaukee is entitled to recover its costs and attorneys' fees from J&L under the indemnity provisions under the Lease.  GRE-Milwaukee is also entitled to reasonable costs and expenses, including reasonable attorneys' fees, as the prevailing party pursuant to Section 31.14 of the Building Lease and Parking Lease.

ANSWER:     JLF denies the allegations in paragraph 41 of the Complaint.

## COUNT II – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

42.     GRE-Milwaukee incorporates all previous paragraphs as this paragraph.

ANSWER:     In response to the allegations in paragraph 42 of the Complaint, JLF incorporates its responses to all preceding paragraphs as if set forth in full herein.

43.     Each contract contains an implied covenant of good faith and fair dealing.

ANSWER:     JLF denies the allegations in paragraph 43 as setting forth and seeking a legal conclusion and affirmatively denies that JLF has breached any implied covenant of good faith and fair dealing.

44.     J&L breached the covenant of good faith and fair dealing by, among other things, engaging in a practice of making superficial repairs to the Property meant to make it seem as if J&L was making the necessary repairs, as opposed to taking the required steps to appropriately maintain, repair, and replace.

ANSWER:     JLF denies the allegations in paragraph 44 of the Complaint.

45.     For example, J&L made spot repairs and surface repairs to limited aspects of the parking lot surface.

ANSWER:     In response to the allegations in paragraph 45 of the Complaint, JLF affirmatively alleges that JLF made repairs to the parking lot surface, but JLF denies any implication that such repairs were insufficient with respect to JLF's obligations under the Leases.

46.     J&L replaced certain dock seals with side components that are the wrong size.

ANSWER:     JLF denies the allegations in paragraph 46 of the Complaint.

47.     J&L replaced water stained ceiling tiles, without fixing the source of the leaks.

ANSWER:     JLF denies the allegations in paragraph 47 of the Complaint.

48.     J&L replaced four heaters with heaters that were at 50% of the capacity as the replaced equipment.

ANSWER:     JLF denies the allegations in paragraph 48 of the Complaint.

49.     J&L concealed active water leaks, making efforts to hide from GRE-Milwaukee water problems that could result in substantial damage.

ANSWER:     JLF denies the allegations in paragraph 49 of the Complaint.

50.     GRE-Milwaukee has incurred and will incur costs, expenses, and loss as a result of J&L's breaches.

ANSWER:     JLF denies the allegations in paragraph 50 of the Complaint.

51.     GRE-Milwaukee incorporates all previous paragraphs as this paragraph.

ANSWER:     In response to the allegations in paragraph 51 of the Complaint, JLF incorporates its responses to all preceding paragraphs as if set forth in full herein.

52.     J&L neglected the Property, including the roof, electrical system, HVAC system, paved surfaces, storm sewer system, sprinkler system, building interior, among other items associated with the Property.

ANSWER:     JLF denies the allegations in paragraph 52 of the Complaint.

53.     J&L's unreasonable conduct and neglect during the term of the Lease resulted in physical damage to the Property.

ANSWER:     JLF denies the allegations in paragraph 53 of the Complaint.

54.     The physical damage to the Property remained at the time of J&L's surrender of the property to GRE-Milwaukee.

ANSWER:     JLF denies the allegations in paragraph 54 of the Complaint.

55.     J&L actions or inactions substantially diminished the value of such Property, which is owned by GRE-Milwaukee.

ANSWER:     JLF denies the allegations in paragraph 55 of the Complaint.

56.     GRE-Milwaukee is entitled to double damages under Wisconsin statute. WIS. STAT. § 844.19.

ANSWER:     JLF denies the allegations in paragraph 56 of the Complaint.

## AFFIRMATIVE DEFENSES

As for its Affirmative Defenses, Defendant states as follows:

A.     Plaintiff's Complaint fails to state a claim upon which relief may be granted.

B.     Plaintiff's claims should be dismissed for lack of subject matter jurisdiction because Plaintiff has failed to sufficiently establish, or even to sufficiently allege, the existence of diversity jurisdiction under 28 U.S.C. § 1332.

C.     Plaintiff's claims are barred by the equitable doctrine of estoppel.

D.     Plaintiff's claims are barred by the equitable doctrine of waiver.

E.     Plaintiff's claims are barred by the equitable doctrine of unclean hands.

F.     To the extent Plaintiff's alleged acquisition of the Property was on an "as is" or similar basis, Plaintiff is precluded from making claims related to any damages accruing prior to Plaintiff's acquisition of the Property.

G.     To the extent damages exist, Plaintiff has failed to mitigate its damages.

H.     To the extent damages exist, the damages were caused in whole or in part by Plaintiff, its predecessors, and/or other third parties.

I.     Plaintiff has caused spoliation of evidence, and Plaintiff's claims are therefore barred.

J.     JLF is entitled to its attorney's fees in this dispute pursuant to the Leases.

K.     Plaintiff's claims are inconsistent with the terms and provisions of the Leases.

L.     Plaintiff's tort claim for waste is barred by the economic loss doctrine.

M.     Plaintiff does not have a certificate of authority for transacting business in the State of Wisconsin and therefore, pursuant to Wis. Stat. § 180.1502(1) cannot maintain a proceeding in any court in Wisconsin until it obtains a certificate of authority.

## COUNTERCLAIMS

As and for its Counterclaims against GRE-Milwaukee, LLC, JLF states and alleges as follows:

1.     JLF incorporates its responses and allegations in the Answer and Affirmative Defenses above.

2.     JLF brings these Counterclaims to the extent that this Court has subject matter jurisdiction over the claims alleged in the Complaint.

## COUNT I - BREACH OF CONTRACT

3.     JLF is entitled to its attorney's fees with respect to the dispute described in the Complaint pursuant to Section 31.14 of the Building Lease and Section 31.14 of the Parking Lease.

4.     Plaintiff has not made any payment to JLF to reimburse JLF for JLF's attorney's fees in this dispute.

5.     Payment from Plaintiff to JLF for such attorney's fees is due now or will become due once JLF prevails in this case.

6.      Plaintiff is therefore in breach of the Building Lease and Parking Lease or will immediately become in breach of the Building Lease and Parking Lease upon JLF prevailing in this case.

## COUNT II - DECLARATORY JUDGMENT
## PURSUANT TO 28 U.S.C. § 2201 (BUILDING LEASE)

7.      The dispute described in Plaintiff's Complaint and in JLF's Answer and Affirmative Defenses above is largely based on a disagreement between the parties as to how certain provisions within the Building Lease referenced in the Complaint should be interpreted.

8.      The dispute regarding the Building Lease centers on Section 7 of the Building Lease, which reads:

> 7.  <u>Repairs</u>.  Expect as otherwise specifically provided in this Lease, throughout the term hereof, Tenant shall keep the Premises in as good a state of condition or repair as existed at the Commencement Date, ordinary wear and tear excepted, and shall be responsible for all maintenance, repairs and replacements to the Premises, structural and nonstructural, ordinary or extraordinary, foreseen or unforeseen, including but not limited to all structural repairs and replacements to the foundation, exterior and/or load bearing walls, roofs, and mechanical systems of the Premises.

9.      A letter from JLF's counsel to Plaintiff's counsel dated January 21, 2016 is attached hereto as Exhibit A and is incorporated herein by reference.  In the letter attached as Exhibit A, JLF's counsel describes JLF's position as to how Section 7 of the Building Lease should be interpreted.

10.      As outlined by JLF's counsel in the letter attached as Exhibit A, Section 7 of the Building Lease should be interpreted consistent with Illustration 1 of § 12.2 of the Restatement (Second) of Property, Landlord & Tenant (the "Restatement").

11.      Illustration 1 of § 12.2 of the Restatement states:

L leases residential property to T for two years. Due to normal use, the
furnace wears out. There is no breach of T's obligation by virtue of the
fact that the furnace has worn out. . . . If the landlord is not obligated to
replace it, the tenant will have to replace it or go without heat; but the
landlord has no right against him if he elects not to replace the furnace,
except to the extent the lack of heat causes other damage which the tenant
could have taken steps to prevent but did not do so, such as allowing the
water pipes to freeze.

12.      Consistent with the Restatement, JLF's position as to the proper interpretation of

Section 7 of the Building Lease can be summarized as follows:

a.   Except as otherwise specifically provided in the Building Lease, with respect
     to repair issues related to ordinary wear and tear, the Building Lease provides
     JLF with discretion to determine whether or not to make such repairs. In
     other words, for repairs that JLF was "responsible for" under Section 7, JLF
     had the option to either (i) make the repairs (in which case JLF was required
     to perform or otherwise pay for the repairs) or (ii) not make the repairs and
     instead proceed with the less-than-perfect condition of the property.

b.   If JLF chose not to perform a particular repair related to an issue caused by
     ordinary wear and tear, JLF was within its rights to do so.

c.   If JLF chose not to perform a particular repair related to an issue caused by
     ordinary wear and tear, JLF was not responsible at the end of the Lease for
     then making the repair.

13.      Based on information and belief and on various letters from Plaintiff and its

counsel, JLF understands Plaintiff to disagree with JLF's interpretation of the Building Lease

outlined both in the preceding paragraphs and in JLF's previous correspondence with Plaintiff.

Plaintiff's interpretation and Plaintiff's demand of well over $2 million suggests that Plaintiff believes Section 7 makes JLF responsible for making the property new again.

14.　　Resolution of this dispute as to the interpretation of the Building Lease will resolve much of the parties' dispute and may result in a resolution of the entire case.

15.　　The parties have a practical interest in the resolution of this dispute related to the interpretation of the Building Lease because it will largely resolve a legal dispute between the parties that relates to the respective responsibilities of both parties under the Building Lease.

16.　　Resolution of the dispute related to the interpretation of the Building Lease will also make discovery and fact-finding at trial more efficient and preserve judicial resources.

17.　　JLF's position as to the interpretation of Section 7 of the Building Lease is consistent with the plain language of the Building Lease and Parking Lease.

18.　　JLF is entitled to a declaratory judgment in its favor as to the proper legal interpretation of Section 7 of the Building Lease pursuant to 28 U.S.C. § 2201.

## COUNT III - DECLARATORY JUDGMENT
## PURSUANT TO 28 U.S.C. § 2201 (PARKING LEASE)

19.　　The dispute described in Plaintiff's Complaint and JLF's Answer and Affirmative Defenses above is partially based on a disagreement between the parties as to how certain provisions within the Parking Lease referenced in the Complaint should be interpreted.

20.　　The dispute regarding the Parking Lease centers on Section 7 of the Parking Lease, which reads:

> 7.　Repairs/Operation of Premises.　Expect as otherwise specifically provided in this Lease, throughout the term hereof, Tenant shall keep the Premises in good condition and repair and be responsible for all maintenance, repairs and replacements to the Premises, ordinary wear and tear excepted, ordinary or extraordinary, and foreseen or unforeseen.　The maintenance obligations for which Tenant is liable shall include, without limitation, keeping the Premises in a reasonably clean, unlittered, orderly and sanitary condition; reasonably

removing snow and ice; and keeping all marking and directional signs distinct and legible.  Landlord shall have no obligation or liability for the failure to provide adequate lighting and security for the Premises.  In the event that Tenant's use of the Premises requires security and/or lighting for the safe operation and use by Tenant, its agents, employees, customers, sublessees and invitees, Tenant shall have the sole obligation and responsibility for providing same.

21.    Section 7 of the Parking Lease should be interpreted the same as Section 7 of the Building Lease, as outlined in paragraphs 9 through 12 of the Counterclaims above, except Section 7 of the Parking Lease places certain additional obligations on JLF with respect to cleanliness, snow removal, signage, lighting, and security for the premises of the Parking Lease.

22.    Accordingly, other than the specifically identified obligations in Section 7 of the Parking Lease (such as cleanliness, snow removal, signage, lighting, and security), with respect to repairs related to issues caused by ordinary wear and tear that were JLF's responsibility and not otherwise excepted by the Parking Lease, JLF had full discretion over whether (i) to make repairs to the premises at JLF's time or expense or (ii) to not make the repairs and to instead proceed with the less-than-perfect condition of the property.

23.    Based on information and belief and on various letters from Plaintiff and its counsel, JLF understands Plaintiff to disagree with JLF's interpretation of the Parking Lease outlined both in the preceding paragraphs and in JLF's previous correspondence with Plaintiff. Plaintiff's interpretation and Plaintiff's demand of well over $2 million suggests that Plaintiff believes Section 7 makes JLF responsible for making the property new again.

24.    JLF's position with respect to the interpretation of the Parking Lease is also consistent with the Restatement and with Illustration 1 of § 12.2 of the Restatement quoted above.

25.     Resolution of this dispute as to the interpretation of the Parking Lease will resolve much of the parties' dispute and may result in a resolution of the entire case.

26.     The parties have a practical interest in the resolution of this dispute related to the interpretation of the Parking Lease because it will largely resolve a legal dispute between the parties that relates to the respective responsibilities of both parties under the Parking Lease.

27.     Resolution of the dispute related to the interpretation of the Building Lease will also make discovery and fact-finding at trial more efficient and preserve judicial resources.

28.     JLF's position as to the interpretation of Section 7 of the Parking Lease is consistent with the plain language of the Building Lease and Parking Lease.

29.     JLF is entitled to a declaratory judgment in its favor as to the proper legal interpretation of Section 7 of the Parking Lease pursuant to 28 U.S.C. § 2201.

## REQUEST FOR RELIEF

WHEREFORE, JLF respectfully requests the following relief:

A.     Dismissal of all of Plaintiff's claims with prejudice;

B.     A money judgment in favor of JLF and against Plaintiff for JLF's past and future attorney's fees related to this dispute;

C.     A declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of JLF and against Plaintiff that Section 7 of the Building Lease is to be interpreted consistent with the description in paragraphs 9 through 12 of the Counterclaims above;

D.     A declaratory judgment pursuant to 28 U.S.C. § 2201 in favor of JLF and against Plaintiff that Section 7 of the Parking Lease is to be interpreted consistent with the description in paragraphs 21 and 22 of the Counterclaims above; and

E.     For such other relief as the Court deems equitable and just.

Dated this 3rd day of May, 2016.

Reinhart Boerner Van Deuren s.c.        Joshua D. Taggatz
22 East Mifflin Street, Suite 600        WI State Bar ID No. 1081477
Madison, WI  53703        jtaggatz@reinhartlaw.com

Mailing Address:
P.O. Box 2018
Madison, WI  53701-2018        BY:   s/Joshua D. Taggatz
Telephone:  608-229-2200              Attorney for Defendant
Facsimile:  608-229-2100